**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**ANTWANN RICHARDSON**                                              **PLAINTIFF**

**v.**                                                    **No. 1:25-cv-00102-MPM-RP**

**UNITED STATES OF AMERICA**                                        **DEFENDANT**

**MEMORANDUM OPINION**

This cause comes before the Court on Defendant the United States of America's Motion to Dismiss [9] for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Plaintiff Antwann Richardson has responded in opposition [15], and the United States filed a reply [19]. The Court has reviewed the parties' submissions and the applicable law and is prepared to rule.

## I.    BACKGROUND

Mr. Richardson served as President of J5 Solutions, LLC, a holding company for several entities owned by Jabari Edwards (collectively, the "J5 entities"). [1] at 1. In 2019, the J5 entities generated total revenues of approximately $18.4 million, with approximately $64,000 of that amount derived from projects connected to the City of Columbus. *Id.* at 3. Beginning in March 2020, Richard Vignogna, then a Special Agent with the Office of the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP") within the U.S. Treasury Department, opened an investigation allegedly directed at the City of Columbus' Blight Elimination Program and then-Mayor Robert Smith. *Id.* at 4-5. Mr. Richardson's Complaint alleges that no basis existed to investigate the Blight Program and that no corruption or illegality connected to it has ever been disclosed. *Id.* at 5. The Blight Program investigation allegedly operated as a pretext to permit Agent Vignogna to investigate Mayor Smith, and by extension, Mr. Edwards, Mr. Richardson, and the J5

entities, in an effort to generate leverage to extract cooperation against the Mayor. *Id.* The Complaint further alleges that Agent Vignogna harbored an obsession with Mayor Smith and committed the resources of the United States to a baseless investigation for that purpose. *Id.*

In March 2020, as the COVID-19 lockdowns took effect, the J5 entities applied for Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") funds. *Id.* at 7. Agent Vignogna monitored the J5 entities' bank accounts throughout this period. *Id.* At the time he obtained grand jury subpoenas in July 2021, the majority of the J5 entities had not yet received PPP or EIDL funds. *Id.* at 6. The financial records obtained through those subpoenas produced no evidence of criminal activity. *Id.* at 6-7. The Complaint alleges that Agent Vignogna made materially false representations to the grand jury, federal prosecutors, and others in order to procure the subpoenas, and that he omitted materially exculpatory statements from his Memoranda of Investigative Activity. *Id.*

Agent Vignogna later observed that certain J5 entities received PPP and EIDL funds and used that receipt as a pretext to initiate charges. *Id.* at 7. To secure the indictment, the Complaint alleges that Agent Vignogna made numerous material misrepresentations to the grand jury, federal prosecutors, and others, including: misrepresenting the regulatory requirements governing the PPP and EIDL programs; omitting exculpatory statements from a witness, James Bell, that contradicted the Government's timeline; and concealing that his chief witness had illegally sought PPP funds for an ineligible entity. *Id.* at 8. Agent Vignogna also submitted an affidavit in support of a search warrant application that the Complaint alleges contained material misrepresentations and omissions negating the U.S. Magistrate Judge's probable cause determination, including false statements regarding the contracts and the use of EIDL funds for one of the J5 entities. *Id.* at 9-10. The U.S. Magistrate Judge issued the warrant. *Id.*

2

Through these misrepresentations and omissions, Agent Vignogna secured a seventeen-count indictment charging Mr. Richardson with PPP and EIDL fraud. *Id.* at 12. Following his indictment, Mr. Richardson was allegedly pressured to cooperate against Mayor Smith and threatened with additional charges if he refused. *Id.* at 11-12. He declined. *Id.* According to the Complaint, Agent Vignogna subsequently admitted to Mr. Richardson that he had been investigating Mr. Edwards for two years before PPP and EIDL funds were involved and that the prosecution had nothing to do with PPP or EIDL fraud but was instead about public corruption in the City of Columbus and obtaining information against Mayor Smith. *Id.* at 5, 11. Agent Vignogna later testified falsely at a suppression hearing in a related proceeding and was removed as case agent. *Id.* at 12. Following a two-week jury trial, Mr. Richardson was acquitted on all seventeen counts. *Id.*

Mr. Richardson now brings this Federal Tort Claims Act ("FTCA") action asserting claims for malicious prosecution and abuse of process, seeking damages for financial loss, reputational harm, and emotional injury sustained over nearly two years of federal prosecution. *See* [1]. For purposes of its motion to dismiss, the Government concedes the essential facts alleged in the Complaint. The Government nonetheless moves to dismiss for lack of subject matter jurisdiction and failure to state a claim. *See* [10]. It argues that Agent Vignogna's grand jury testimony is subject to absolute immunity, that claims based on the search warrant affidavit have no state-law analog under the FTCA, and that Mr. Richardson's remaining claims are barred by the discretionary function exception, 28 U.S.C. § 2680(a).

## II. STANDARD OF LAW

### A. 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of a case on the grounds that the court lacks subject matter jurisdiction. The party asserting that subject matter jurisdiction exists bears the burden of proof. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The court may base its consideration on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). "Courts consider whether the FTCA applies via a Rule 12(b)(1) motion, because whether the government has waived its sovereign immunity goes to the court's subject matter jurisdiction." *Campos v. United States*, 888 F.3d 724, 730 (5th Cir. 2018) (quoting *Tsolmon v. United States*, 841 F.3d. 378, 382 (5th Cir. 2016)).

### B. 12(b)(6) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint. The court must accept all well-pleaded facts as true and liberally construe the complaint in a light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "To survive, a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.   ANALYSIS

The FTCA is a general waiver of sovereign immunity that permits civil actions against the United States for negligent or wrongful acts or omissions of any government employee acting within the scope of their employment. 28 U.S.C. § 1346(b). That waiver is subject to numerous exceptions and provisos that restore sovereign immunity in defined circumstances. *See Sutton v. United States*, 819 F.2d 1289, 1292 (5th Cir. 1987). Two exceptions are relevant here: the law enforcement proviso under § 2680(h) and the discretionary function exception under 28 U.S.C. § 2680(a). The Fifth Circuit has long held that "[n]either the discretionary function exception nor the law enforcement proviso 'exist[s] independently of the other nor does one predominate over the other.'" *Campos*, 888 F.3d at 731 (quoting *Sutton*, 819 F.2d at 1295). The proper approach is to first examine whether the law enforcement proviso applies, then assess the discretionary function exception in light of the specific conduct at issue. *Campos*, at 737.

### A.  Law Enforcement Proviso

Section 2680(h) of the FTCA excepts from the general waiver of the sovereign immunity any claim arising out of certain intentional torts, including assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. In other words, § 2680(h) restores sovereign immunity for those torts, rendering them generally not actionable against the United States. In 1974, Congress amended § 2680(h) by adding the law enforcement proviso, which operates as an exception to that exception. *Sutton*, 819 F.2d at 1292. The proviso relinquishes the restored immunity and waives it for claims arising out of six intentional torts: assault, battery, false imprisonment, false arrest, malicious prosecution, and abuse of process, when they arise from the "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h).

5

Congress enacted the law enforcement proviso knowing that investigative and prosecutorial decisions were already considered discretionary, and the proviso must therefore be construed to have meaningful effect even where the underlying conduct involves an element of discretion. *Sutton*, 819 F.2d at 1294-95. "[I]f the law enforcement proviso applies, sovereign immunity is waived." *Dickson v. United States*, 11 F.4th 308, 314 (5th Cir. 2021) (citing *Millbrook v. United States*, 569 U.S. at 50 52-53 (2013)); *see also* 28 U.S.C. § 2680(h).

Two requirements govern the proviso's application: the defendant must have the status of an investigative or law enforcement officer, and the alleged acts or omissions must have caused one of the six enumerated torts. *Millbrook*, 569 U.S. at 54-55. An investigative or law enforcement officer is any officer "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). The Supreme Court in *Millbrook* expressly rejected any requirement that the officer be engaged in investigative or law enforcement activity at the time of the alleged tort; status alone controls. *Id.* at 57; *accord Campos*, 888 F.3d at 737; *Dickson*, 11 F.4th at 314-15.

Both requirements are satisfied here. The Complaint alleges that Agent Vignogna operated as a federal law enforcement officer empowered to execute searches, seize evidence, and make arrests, and that he served as a case agent responsible for the "initiation, maintenance, expansion and ultimate failure" of the prosecution of Mr. Richardson. [1] at 12. The Government does not contest that Agent Vignogna held law enforcement officer status. The claims asserted—malicious prosecution and abuse of process—are two of the six torts the proviso covers. Accordingly, the Court finds that the law enforcement proviso applies, and sovereign immunity is waived for these claims, subject to its analysis of the discretionary function exception that follows.

### B. Search Warrant Affidavit

The Government contends that applying for a search warrant is an inherently governmental act for which no private-person counterpart exists, and that claims resting on the affidavit therefore fall outside the FTCA's waiver of sovereign immunity. [10] at 8-9; [19] at 10. The FTCA conditions liability on circumstances where a private person would be liable under state law, 28 U.S.C. § 1346(b)(1), and the Government cites to case law outside this jurisdiction for the preposition that the act of presenting a sworn affidavit to a U.S. Magistrate Judge in support of a search warrant application is a function only the government can perform. *See Casillas v. United States*, 2009 WL 735188 (D. Ariz. Mar. 19, 2009) (*citing Washington v. Drug Enf't Admin.*, 183 F.3d 868, 873 (8th Cir. 1999)). Mississippi law reinforces this conclusion by providing no independent civil remedy for perjured testimony. *Knotts by Knotts v. Hassell*, 659 So. 2d 886, 890 (Miss. 1995). Standing alone, therefore, the affidavit conduct does not fall within the FTCA's waiver.

However, Mr. Richardson does not directly contest the no-analog bar as applied to the affidavit in isolation. Instead, he argues that the false statements embedded in the affidavit are not a freestanding category of misconduct but are part of a broader pattern of fabrication, suppression, and misrepresentation that Agent Vignogna carried out in written and oral communications to federal prosecutors and others entirely outside the grand jury room and throughout the investigation. *See* [1]; [16] at 20-22. On that point, Mr. Richardson is correct that the *Rehberg* Court itself recognized that absolute immunity does not extend to the falsification of affidavits or the fabrication of evidence outside the grand jury context. *Rehberg v. Paulk*, 566 U.S. 356, 370 n.1 (2012). The question, then, is not whether the affidavit standing alone is actionable, but whether the affidavit allegations are so intertwined with the broader pattern of non-governmental misconduct that they cannot be cleanly severed at the pleading stage.

The Court concludes that they cannot. The Complaint alleges that the same false statements and material omissions Agent Vignogna made in the affidavit were also communicated orally and in writing to federal prosecutors and others throughout the investigation. *See* [1] at 8-10. Those out-of-court communications carry no inherent governmental character. False statements made to induce a prosecution may carry state-law analogs in fraud or intentional representations, and Mississippi common law recognizes that false statements made outside a judicial proceeding may support a claim for malicious prosecution. *See McCorkle v. McCorkle*, 811 So. 2d 258, 266 (Miss. Ct. App. 2001); *Gunter v. Reeves*, 198 Miss. 31, 38, 21 So. 2d 468, 470 (1945).

The Government's Reply correctly observes that Mr. Richardson did not directly respond to the no-analog argument as applied to the affidavit. [19] at 10. That silence is noted. Nevertheless, because Mr. Richardson's malicious prosecution and abuse of process claims do not rest solely on the affidavit conduct, and because those claims independently draw on a broader pattern of alleged out-of-court misconduct for which state-law analogs plausibly exist, the no-analog bar does not defeat the claims in their entirety at this stage. Determining precisely which alleged misrepresentations were made exclusively within the warrant affidavit, as opposed to in separate investigative communications or prosecutorial submissions, requires a factual record that does not yet exist. That inquiry is premature before discovery. Should the developed record reveal specific damages attributable exclusively to the affidavit conduct with no cognizable state-law analog, the Government may reassert this argument at the summary judgment stage.

### C. Grand Jury Testimony

The Government contends that the essence of Mr. Richardson's claims are based on Agent Vignogna's grand jury testimony, which it argues is barred by absolute immunity under *Rehberg v. Paulk*, 566 U.S. 356 (2012). [10] at 6; [19] at 8-9. In *Rehberg*, the Supreme Court held that

witnesses in grand jury proceedings are absolutely immune from civil liability based on their testimony, extending the trial-witness immunity recognized in *Briscoe v. LaHue*, 460 U.S. 325 (1983), to the grand jury context. 566 U.S. at 369. The Supreme Court grounded that immunity in concerns about retaliatory litigation, witness availability, and testimony distorted by fear of subsequent civil liability. *Id.* at 367. The Government's argument, however, overreads *Rehberg*.

The Supreme Court expressly recognized that absolute immunity does not extend to "*all* activity that a witness conducts outside the grand jury room." *Id.* at 370 n.1 (emphasis in original). Law enforcement officers who falsify affidavits or fabricate evidence are entitled only to qualified immunity, not absolute immunity, for such conduct. *Id.* (citing *Kalina v. Fletcher*, 522 U.S. 118, 129-31 (1997); *Malley v. Briggs*, 475 U.S. 335, 340-45 (1986); *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-76 (1993)). Thus, the immunity attaches to testimony and to activity sufficiently preparatory of that testimony. It does not extend to a law enforcement officer who initiates and furthers a prosecution through fabricated evidence, suppressed exculpatory material, and misrepresentations made outside the grand jury room. The Fifth Circuit draws this line precisely. In *Wilson v. Stroman*, 33 F.4th 202, 211-13 & n.7 (5th Cir. 2022), the court distinguished between claims seeking to hold a defendant liable for grand jury testimony itself, which *Rehberg* immunizes, and "relying on a grand jury witness's testimony to prove that the grand jury deliberations were tainted" via, as alleged here by Mr. Richardson, false statements, fabricated evidence, or suppressed exculpatory material occurring outside the grand jury room, which *Rehberg* does not immunize. That distinction controls here.

The Complaint alleges substantial misconduct occurring entirely outside the grand jury's presence. Agent Vignogna allegedly omitted exculpatory statements from the Memoranda of Investigative Activity prepared and circulated independently of any grand jury session; made

9

materially false representations and reports to the grand jury, federal prosecutors and others; misrepresented to the grand jury, federal prosecutors and others, PPP and EIDL regulations, including the September 8, 2021 Small Business Administration interim rule change; and concealed to the grand jury, federal prosecutors and others, that his chief witness had illegally obtained sought PPP funds for an ineligible entity. [1] at 6-9. Mr. Richardson's contention is that these allegations do not seek to hold the government liable for what Agent Vignogna said in the grand jury room; rather, they establish liability grounded in the out-of-room fabrication and suppression that allegedly produced a tainted prosecution and indictment. [16] at 24-27.

The Government's Reply attempts to neutralize this distinction by arguing that all conduct outside the grand jury room is independently barred by either the discretionary function exception, the no-state-law-analog rule, or irrelevance. [19] at 8-9. The Court addresses the discretionary function exception separately below. As to the state-law analog point, Mississippi law does not bar Mr. Richardson's claims as broadly as the Government suggests. The Government cites *Knotts by Knotts v. Hassell*, 659 So. 2d at 890, and *Knight v. R.S.*, 315 So. 3d 549 (Miss. Ct. App. 2021), for the proposition that Mississippi bars civil liability for all statements made in judicial proceedings. *See* [10] at 7-9. The Court, again, does not read those cases so broadly. *Knotts* barred a perjury claim against physician witnesses for deposition misstatements; *Knight* barred a defamation claim resting on courtroom testimony. Neither case involved malicious prosecution. Under Mississippi law, the absolute judicial privilege for statements made in connection with judicial proceedings does not bar a malicious prosecution claim when malice is shown. *McCorkle*, 811 So.2d at 266. As Mr. Richardson correctly points out, Mississippi law further permits a plaintiff to rebut the presumption of probable cause by showing that an indictment resulted from false testimony, withheld information, or prosecutorial misconduct, proof that necessarily draws on conduct outside

10

the grand jury room. S*pringfield v. Members 1st Cmty. Fed. Credit Union*, 106 So. 3d 826, 830-31 (Miss. Ct. App. 2012); [16] at 26-27.

The Court therefore need not draw the precise outer boundary of grand jury immunity to resolve this motion. Mr. Richardson does not seek to hold the government liable for Agent Vignogna's grand jury testimony as an independent basis for relief. Rather, he invokes that testimony as evidence of the broader pattern of fabrication and suppression that allegedly infected the entire prosecution from its inception. That is a permissible use of otherwise immunized testimony, as the Fifth Circuit recognized in *Wilson*. 33 F.4th at 211-13. Because Mr. Richardson's malicious prosecution and abuse of process claims rest independently on the alleged out-of-room misconduct, and because the grand jury testimony is offered as corroborating evidence of that misconduct rather than as the predicate for a standalone claim, *Rehberg* does not bar those claims. The Government's motion to dismiss on grand jury immunity grounds is denied.

### D. Discretionary Function Exception

Having determined that the law enforcement proviso confers jurisdiction over the claims as pleaded, and that the *Rehberg* immunity challenge does not warrant dismissal, the Court now turns to the discretionary function exception. As the Fifth Circuit instructs, the proper approach is to examine the proviso first and then assess the discretionary function exception in light of the specific conduct at issue. *Campos*, 888 F.3d at 736-37. That conduct, as relevant here, refers to the broader pattern of investigative and prosecutorial misconduct alleged in the Complaint, including the misrepresentations and omissions made to the grand jury, federal prosecutors and others and the fabrication and suppression of evidence in investigative reports and written communications, which led to the grand jury presentation and indictment. [10] at 9; [16] at 27-29.

The discretionary function exception, 28 U.S.C. § 2680(a), preserves sovereign immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." When the exception applies, the court lacks subject matter jurisdiction and dismissal is proper under Rule 12(b)(1). *See Buchanan v. United States*, 915 F.2d 969, 970 (5th Cir. 1990). Mr. Richardson bears the burden of alleging a claim facially outside the exception. *Joiner v. United States*, 955 F.3d 399, 404 (5th Cir. 2020).

The Supreme Court has developed a two-part test to determine whether the exception applies. First, the court considers whether the challenged act involved an element of judgment or choice, meaning that no federal statute, regulation, or policy specifically required the government employee to follow a particular course of action. *United States v. Gaubert*, 499 U.S. 315, 322 & 329 (1991). When a mandatory directive governs the conduct, the discretionary function exception does not apply because "the employee has no rightful option but to adhere to the directive." *Id.* at 322 (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Second, if the conduct involved some element of judgment, the court examines whether that judgment is of the kind the exception is designed to protect, meaning it rests on considerations of social, economic, or public policy. *Gaubert*, at 322-23; *see also Sutton*, 819 F.2d at 1293.

The Court acknowledges at the outset that Mr. Richardson has not identified a specific statutory provision, regulation, or enforceable policy applicable to SIGTARP agents that mandated a particular course of conduct in the traditional sense contemplated by *Gaubert*. The Justice Manual provisions he cites apply only to Department of Justice personnel, not Treasury employees. [16] at 29; [19] at 2. The Government correctly points out that the criminal statutes Mr. Richardson cites, 18 U.S.C. §§ 1001, 1621, 1623, provide no private right of action and therefore cannot

12

independently authorize suit under the FTCA. [16] at 29; [19] at 3. Similarly, constitutional violations cannot function as predicate torts under the FTCA at all. *FDIC v. Meyer*, 510 U.S. 471, 478 (1994). These conclusions do not, however, fully resolve the *Gaubert* Step One inquiry. The Government's Reply conflates two distinct questions. The first is whether a statute qualifies as a mandatory directive that removes an employee's discretion, which is what *Gaubert* actually asks. The second is whether that statute independently authorizes a civil lawsuit. The Government answers only the second and treats it as dispositive of the first. It is not. *Berkovitz* asks whether a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow[,]" not whether that statute creates a private remedy. *Berkovitz*, 486 U.S. at 536. Sections 1001, 1621, and 1623 of Title 18 categorically prohibit false statements, perjury, and concealment of material facts in any matter within federal jurisdiction. The Court reads those provisions to prescribe mandatory conduct to anyone operating within that jurisdiction, including SIGTARP agents. The fact that those statues carry no civil remedy means only that Mr. Richardson must proceed through the FTCA, not that Agent Vignogna had lawful discretion to violate them.

The Government is correct that SIGTARP's enabling statute broadly vests the Special Inspector General with discretion over the systems, procedures, and controls used to investigate cases, 12 U.S.C. § 5231, and that decisions about when, where, how to investigate, and whether to prosecute are ordinarily discretionary. *Sutton*, 819 F.2d at 1294-95. Critically, however, the discretion to investigate does not encompass discretion to fabricate evidence, suppress exculpatory material, or make knowingly false statements in the course of that investigation. *See Sutton*, 819 F.2d at 1293 (holding that an agent who embarks on an intentional abuse within the meaning of § 2680(h) exceeds the scope of his authority and acts outside his discretion altogether). Mr.

13

Richardson's failure to identify a mandatory directive in the conventional sense does not, therefore, end the inquiry.

The Fifth Circuit has made it clear that the discretionary function exception does not protect officers who break the law or exceed their authority. *Sutton*, 819 F.2d at 1293; *see also Campos*, 888 F.3d at 733-34 (citing *Tsolmon v. United States*, 841 F.3d 378, 384 (5th Cir. 2016)). Specifically, in *Sutton*, the Fifth Circuit held that "[a] government agent who departs from the duties of an investigator and embarks on an intentional abuse within the meaning of Sec. 2680(h) similarly exceeds the scope of his authority and acts outside his discretion." 819 F.2d at 1293. The government is liable "*whenever* its agents commit constitutional torts and *in any case* in which a Federal agent commits acts which under accepted tort principles constitute one of the intentional torts enumerated in the proviso." *Id.* at 1296 (emphasis in original). The allegations here closely mirror those in *Sutton*, where a federal postal inspector suppressed favorable evidence and manipulated other evidence in order to secure indictments. The Fifth Circuit reversed dismissal there, and the same result follows here.

The Complaint alleges that Agent Vignogna deliberately fabricated evidence, omitted exculpatory material from investigative reports, made knowing misrepresentations to federal prosecutors and others orally and in writing, and perverted the prosecutorial machinery to coerce cooperation rather than to pursue legitimate law enforcement objectives. *See* [1]; [16] at 16. If those allegations are true, they do not describe the exercise of good-faith investigative discretion. They describe the intentional torts that Congress, through the law enforcement proviso, specifically decided should give rise to liability. The nature and quality of such conduct, deliberate fabrication, knowing suppression, and perversion of the investigative process to serve an ulterior purpose, is precisely what Congress targeted when it waived sovereign immunity for malicious

14

prosecution and abuse of process committed by federal law enforcement officers. 28 U.S.C. § 2680(h); *see United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 (1984). That congressional judgment reinforces the conclusion that such conduct, as alleged, falls outside the protection of the discretionary function exception.

The Government's paragraph-by-paragraph analysis in its Reply brief categorizes nearly every allegation in the Complaint as either absolutely immune, subject to the discretionary function, or conclusory, and further argues that § 2680(a)'s "whether or not the discretion involved be abused" language bars Mr. Richardson's claims regardless of Agent Vignogna's alleged bad motive or intentional misconduct. *See* [19]. Neither argument is persuasive at this stage. The categorization begs the question the exception requires this Court to answer. And therein lies the rub. Whether Agent Vignogna's specific conduct constitutes protected investigative judgment or prohibited intentional abuse depends on facts not yet in the record: the content of his investigative memoranda, the precise representations made to federal prosecutors and others, the circumstances surrounding the grand jury presentations, and the nature of the alleged exculpatory evidence he withheld.

The Government cites *Wilson v. Midland Cnty., Texas*, 116 F.4th 384 (5th Cir. 2024) for the observation that malicious prosecution is a "disfavored tort." [19] at 10. That characterization, however, does not transform a factual dispute about the nature of an agent's conduct into a legal question resolvable on the pleadings. The "whether or not abused" language preserves immunity for poor judgment and even negligent misuse of otherwise legitimate discretion, but it does not immunize conduct that exceeds the agent's lawful authority entirely. As *Sutton* makes clear, an agent who embarks on an intentional abuse within the meaning of § 2680(h) exceeds the scope of his authority and acts outside his discretion altogether as applied under § 2680(a). 819 F.2d at

1293. Reading § 2680(a)'s "whether or not abused" language to swallow the law enforcement proviso entirely would render it a nullity, a result the Fifth Circuit and basic principles of statutory construction forbid. *See Sutton*, 819 F.2d at 1295; *United States v. Am. Trucking Ass'ns*, 310 U.S. 534 (1940).

*Sutton* further instructs that the threshold immunity question like this one is not always answerable on general pleadings and courts should not attempt to resolve it on a Rule 12(b) motion when the proper disposition requires factual development by the parties. 819 F.2d at 1299. The appropriate vehicle for a fully developed discretionary function analysis is a motion for summary judgment after discovery. *Id.* The Government may reassert its discretionary function defense at that stage on a developed factual record. The motion to dismiss on discretionary function grounds is therefore denied without prejudice.

## IV.     CONCLUSION

For the foregoing reasons, the Motion to Dismiss [9] is DENIED.

SO ORDERED, this the 18th day of May, 2026.

/s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI
